UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN KELLY, a Minor by his
Next Friend EARL KELLY,

Plaintiffs,

Case No. 05-73253
Honorable David M. Lawson

v.

B. FRUIT and J. BOBBY,

Defendants.
_______________________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Jonathan Kelly, a minor, who is bringing suit through his next friend Earl Kelly, filed a complaint alleging that B. Fruit and J. Bobby, two City of Westland police officers, wrongfully arrested him, falsely imprisoned him, and used excessive force in the process. The matter is before the Court on the defendants' motion for summary judgment based on the defenses of qualified immunity directed to the federal claims brought under 42 U.S.C. § 1983, and governmental immunity as to the state law claims. The Court heard oral argument on the motion on December 5, 2006. The Court now finds that the defendants are entitled to qualified immunity on the claim that the minor plaintiff was unlawfully seized but not on the excessive force claim. The defendants are not entitled to governmental immunity on the state law claims alleging intentional torts, but they are entitled to judgment in their favor on the merits of the false arrest, false imprisonment, and gross negligence claims. Therefore, the Court will grant in part and deny in part the defendants' motion for summary judgment. The plaintiffs may proceed to trial on their federal excessive force claim and state law assault and battery claim.

I.

The incident that forms the basis of the complaint occurred on May 26, 2005, when the plaintiff, who was 16 years old at the time, went to visit his cousin James Simpson, who lived at 32316 Kalamazoo in Westland, Michigan to play basketball. James was not at home when the plaintiff arrived, so the plaintiff sat on the porch and waited for him. A few minutes later, the plaintiff saw his cousin James and a group of ten or fifteen teenagers he did not know walk up to the house; a police car was driving behind them. The plaintiff testified that the group of adolescents "didn't all look right" and "were all hollering and yelling, so [the plaintiff] knew there was something wrong." Pl.'s Resp. Ex. A, J. Kelly Dep. at 30. One of the group was carrying a metal pipe. The plaintiff did not know what, if anything, the people in the group had done, but he walked into his cousin's house "[b]ecause [he] did not want to get into any trouble." *Id.* at 32. The plaintiff knew he "didn't do anything," and he "wanted whatever they did to stay with them." *Ibid*. One of the other unknown individuals from the group followed the plaintiff into the house. From inside the house, the plaintiff could hear the others in the group "hollering and yelling" out on the porch. *Id.* at 53. "It sounded like they were stomping their feet almost." *Ibid*.

A few minutes later, the plaintiff, who was still inside the house, heard the front door open and an adult male say, "Where is those two kids?" Pl.'s Resp. Ex. A, J. Kelly Dep. at 36. The plaintiff and the other unknown individual went toward the door, and the two defendants, Officers Fruit and Bobby, entered the house. The defendants allege in their brief that they were given permission to enter the house by James Simpson. However, they offer no deposition testimony, affidavit, or other evidence in support of this fact. According to the plaintiff, Officer Bobby said, "you like running from the police, don't you?" Pl.'s Resp. Ex. A, J. Kelly Dep. at 36, 40. The plaintiff testified that Officer Bobby searched him and called him a "shit head." *Id.* at 37. The

plaintiff testified that Officer Fruit punched him in the back of the head with a fist when he denied being a "shit head." *Id.* at 37, 40. The plaintiff almost fell, but Officer Bobby "grabbed [him] and threw [him] up against the wall." *Id.* at 40. He said his right arm and side hit the wall. Then Officer Fruit punched the plaintiff in the back of the head again.

The plaintiff stated that the officers grabbed him by his arms and dragged him outside. They took him to the police car, and Officer Fruit punched him in the head again before they put him in the back of the car. The officers closed the car door and started talking to the group of individuals who were still on the porch. The plaintiff could not hear what they were saying. About fifteen minutes later, Officer Fruit came back to the car and asked the plaintiff, "What were you doing at those girls' house?" *Id.* at 48. The plaintiff told the officer he did not know what he was talking about. Officer Fruit shut the car door and went back to talk to the people on the porch.

About fifteen minutes later, Officer Fruit came back to the police car with the unknown boy who had gone into the house with the plaintiff and put him in the back seat with the plaintiff. The plaintiff testified that he was "scared to death" and "shaking in the back of the cop car." *Id.* at 50. Approximately fifteen more minutes pass. Then Officer Fruit came back to the car and opened the door to let the plaintiff out. He told the plaintiff, "I like your cooperation. You can come out of the car." *Id.* at 51. The plaintiff claims he was in the police car for about forty-five minutes. Officer Fruit told the plaintiff to sit on the porch with the rest of the group. The plaintiff saw Officer Bobby get in a different police car and drive away.

Officer Bobby was gone for about ten minutes and then returned with two women who stayed in Bobby's patrol car. The plaintiff heard Officer Bobby ask one of the women, "which one was he?" The woman "point[ed] out her hand and she just goes, all of them." Pl.'s Resp. Ex. A, J.

Kelly Dep. at 55. Officer Bobby then specifically asked the woman about the plaintiff, who was wearing black clothing. The woman looked at the plaintiff and told Officer Bobby, "No, I ain't never seen him around there. He wasn't there." *Id.* at 55-56. The plaintiff saw Officers Bobby and Fruit writing tickets and issuing them to the other kids. Everyone of the group received a citation except the plaintiff. As the officers were wrapping it up, the plaintiff shook Officer Fruit's hand and told him, "I'm sorry for whatever they did." *Id.* at 63-64. He explained that he was relieved that he did not get a ticket. Then the officers and the others, except the plaintiff's cousin, left the scene.

After everyone left, James, the plaintiff's cousin, told the plaintiff that the citations were for "harassing people." Pl.'s Resp. Ex. A, J. Kelly Dep. at 66. James told the plaintiff that one of the women in the police car had slashed the tires of one of the others in the group. James told the plaintiff that the group went to the woman's house and "started hollering" because "[t]hey were wanting to start a fight" with some guys who were at the woman's house. *Id.* at 67. The woman called the police. The defendants allege in their brief that they went to the scene after receiving "a complaint that a group of juvenilles [sic] had threatened to kill and/or fire bomb the home at 32257 Hillsdale, Westland." Defs.' Mot. Summ. J. Br. at 2. However, the exhibit they cite in support of this statement, the plaintiff's answer to an interrogatory, does not say that or otherwise suport the statement in the brief.

The plaintiff alleges that after the incident, he had a headache, his arm hurt, and he felt dizzy. The next day, the plaintiff's mother scheduled an appointment with the family doctor, who prescribed 800 milligram Motrin tablets, which the plaintiff states he must still take or he suffers a lot of pain.

The only record evidence submitted by the parties consists of the plaintiff's deposition, the plaintiff's answers to interrogatories, and the complaint. The plaintiff filed his complaint in Wayne County Circuit Court on August 12, 2005. The defendants removed to this Court on August 23, 2005, invoking the Court's federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441. The complaint contains four counts. Counts one and two allege assault and battery, and false arrest and imprisonment in violation of state law. Count three alleges that the seizure of the plaintiff without probable cause and the use of excessive force against him constitute a section 1983 violation of the Fourth and Fourteenth Amendments. Count four alleges gross negligence in violation of Mich. Comp. Laws § 691.1407. The defendants seek summary judgment as to all of the counts.

I.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine"

if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus a factual dispute that "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). It must be emphasized, however, that "[i]n evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A.

The defendants contend that they are entitled to qualified immunity as to all counts of the complaint. Qualified immunity, however, is a defense only to the federal claims; it does not address the plaintiffs' state law claims. This Court recently summarized the current state of the law in this Circuit on the qualified immunity defense:

> Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that a claim of qualified immunity must be examined in two steps: "[f]irst, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right,'" and "the court must then decide 'whether the right was clearly established.'" *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).
>
> The Sixth Circuit has expanded that inquiry into a three-step sequential analysis, stating: "The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.'" *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 219 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)); *see also*

> *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). That court later explained that although the Supreme Court continues to use the two-step approach, *see Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam), "'the three-step approach may in some cases increase the clarity of the proper analysis.'" *Swiecicki v. Delgado*, 463 F.3d 489, (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir. 2005)). It appears that when the state actor's conduct is obviously "objectively unreasonable" and violates a constitutional right, the court will "collapse" the last two steps. *Ibid.* (quoting *Caudill v. Hollan*, 431 F.3d 900, 911 n. 10 (6th Cir. 2005)). Where a more exacting analysis of the facts may be necessary, the court tends to employ the third step, since "[i]t is important to emphasize that [the step-two] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (internal quotes and citation omitted). However, because the defendant raised the qualified immunity defense, the burden is on the plaintiffs to prove that [the] defendant . . . is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (holding that "[o]nce the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity").

*Curry ex rel. Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 733-34 (E.D. Mich. 2006).

The plaintiffs contend that the defendants violated the minor plaintiff's federal constitutional rights in two respects: seizing and holding him without probable cause, and using excessive force in the course of the detention. The defendants say that they properly could detain the plaintiff to investigate the suspicious circumstances they confronted to determine if criminal activity had taken place.

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813

(6th Cir. 1999) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). The Sixth Circuit uses a two-step test to determine whether a *Terry* stop is permissible:

> First, the Court must determine whether there was a proper basis to stop the individual based upon the officer's "aware[ness] of specific and articulable facts which gave rise to a reasonable suspicion." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) (quotation omitted). Second, the Court must evaluate "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.* (quotation omitted).

*United States v. Martin*, 289 F.3d 392, 397 (6th Cir. 2002).

The defendants in this case have failed to submit any evidence regarding the complaint they received that led them to the minor plaintiff's cousin's house, nor have they offered any sworn testimony of their own as to the facts within their knowledge that gave rise to their "reasonable suspicion." However, the plaintiff's deposition testimony reveals that his cousin and the other adolescents went to a woman's house and "started hollering" because "[t]hey were wanting to start a fight," and that the woman called the police. Pl.'s Resp. Ex. A, J. Kelly Dep. at 67. Although the plaintiff was not involved, once the group of boys went onto the porch of the house in which the plaintiff retreated, it was not unreasonable for the police not to realize that the plaintiff was not part of the group. The Court does not accept the defendants' characterization of the plaintiff's behavior as "flight," since according to his testimony he just walked into the house and did not run down the street. Nonetheless, the police had a reasonable suspicion that the plaintiff had been involved with the group's activities. The defendants put the plaintiff in the back of the police car only long enough for them to rule out his involvement in criminal activity. The detention was justified under the two-step test used by the Sixth Circuit. *United States v. Martin*, 289 F.3d 392, 397 (6th Cir. 2002).

The plaintiffs contend, however, that holding the minor plaintiff in the police car for over forty-five minutes exceeded the scope of the "brief investigatory stop" authorized by the *Terry* line of cases, and that the encounter matured into a full-blown arrest requiring probable cause. The Supreme Court discussed the issue of when a *Terry* stop becomes a seizure or arrest in *United States v. Sharpe*, 470 U.S. 675 (1985). Police officers pulled over a blue pickup with an attached camper that was traveling with a Pontiac. The pickup stopped, but the Pontiac refused. The driver of the pickup was detained for twenty minutes while the officers chased the Pontiac. When the officers smelled marijuana coming from the camper, they searched it. The Supreme Court held that the twenty-minute detention was permitted under *Terry*:

> Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on *Terry* stops. While it is clear that "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion," we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. Much as a "bright line" rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. . . .
>
> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.

*Sharpe*, 470 U.S. at 685-86.

In *Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006), the Sixth Circuit found that a *Terry* stop had become an arrest in violation of the Fourth Amendment when the police used an oppressive and excessive show of force, the subjects remained cooperative, the information that the subjects were

involved in a robbery was "nothing more than a bare inference," and the officers refused to remove handcuffs from the subjects after they learned that no robberies had been reported despite their persistent requests. *Id.* at 780-82. The court's analysis emphasizes that the inquiry must be fact-specific and no individual factor will automatically transform an investigative stop into an arrest. "Although the use of guns, handcuffs, and detention in a police cruiser do not automatically transform a *Terry* stop into an arrest, these displays of force must be warranted by the circumstances." *Id.* at 781 (citing stop. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999)).

In another recent case, the Sixth Circuit held that detention in the back of a police car does not automatically turn a *Terry* stop into an arrest. *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006). In that case, an officer responding to a report of shots fired detained a suspect in the back of his car while he searched the area for a gun. The court of appeals found that the brief detention was not an arrest. "[B]riefly placing Caruthers in the patrol car while searching the ground for an abandoned weapon was an investigative means reasonably related in scope to the situation at hand." *Id.* at 469.

In this case, it appears that the police officers did not hold the minor plaintiff any longer than was necessary to sort out the involvement of the several youths at the scene. The officers conducted an on-the-scene investigation to identify those involved in the ruckus. They released the minor plaintiff as soon as they eliminated him as a suspect. The Court finds that the detention itself of the minor plaintiff did not violate the Fourth Amendment.

However, although police officers may use "some degree of physical coercion or threat thereof" to effectuate a detention, they may not use more force that is "reasonable" within the

meaning of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Use of excessive force in detaining or arresting people is unreasonable, and therefore unconstitutional. The Sixth Circuit recently explained:

> The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers. *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (holding that a jury could find that the police officers used excessive force in placing a wheelchair-bound suspect in the back of their squad car). Courts must determine whether a particular use of force is reasonable based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In evaluating the reasonableness of force used, courts should examine "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (citations and quotation marks omitted). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

*Smoak*, 460 F.3d at 783.

The Court believes that the record describes a constitutional violation because the degree of force the officers used to effectuate the detention was unreasonable. The plaintiff testified that Officer Fruit punched him in the back of the head three times, and that Officer Bobby threw him against the wall. This type of force is clearly unreasonable. The plaintiff was a minor at the time of this incident. This force was not necessary or even reasonable based on the circumstances and the severity of the crime at issue, which, according to the plaintiff's testimony, was simply unruly behavior by a group of adolescents. There is no evidence that the plaintiff posed an immediate threat to the safety of officers or others, and his testimony indicates he was cooperative. He even testified that Officer Fruit admitted he was cooperative. Even if the Court accepts the defendants' characterization of the plaintiff's behavior as "attempting to evade arrest by flight," which is not supported on the present record, any such attempt at flight had clearly ended by the time the

defendants allegedly punched the plaintiff. The amount of force allegedly used against the plaintiff was unreasonable and excessive and therefore a violation of the Fourth Amendment.

In determining if the constitutional right was clearly established in the factual context of the case, the Court is mindful that "[i]It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205. Therefore, if an officer makes a mistake as to how much force is required, he will still be entitled to qualified immunity so long as that mistake was reasonable. *Ibid.*

> In determining objective reasonableness of an officer accused of using excessive force, we will consider several factors. We should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . . In addition, we have also found that the definition of reasonable force is partially dependent on the demeanor of the suspect.

*Solomon*, 389 F.3d at 174.

In applying these considerations to the facts at hand, it would be clear to a reasonable officer that the amount of force used against the minor plaintiff by Officers Bobby and Fruit was unlawful. The crime involved was a minor offense. The minor plaintiff was entirely cooperative, unarmed, posed no threat, and did not resist. Once confronted in the house by the officers, the plaintiff did not attempt to flee. The plaintiff testified that Officer Bobby first hit the plaintiff after remarking that he was running from the police. There are facts in the record, therefore, from which a jury could conclude that the officers' assaultive conduct toward the minor plaintiff was gratuitous and retaliatory, amounting to an on-the-scene administration of punishment. The Court finds that the defendants' conduct was objectively unreasonable and violated clearly established constitutional rights. The defendants are not entitled to qualified immunity on the excessive force claim.

B.

The defendants also argue they are entitled to immunity under the Governmental Immunity Act, Mich. Comp. Laws § 691.1401, unless they were grossly negligent. The defendants state they acted reasonably under the circumstances and therefore their actions cannot qualify as gross negligence. The plaintiff states the defendants' actions were intentional and therefore "beyond gross negligence." The plaintiff further states that whether the defendants' actions constitutes gross negligence is a matter for a jury to decide.

Michigan provides immunity from state law tort claims for government employees under certain conditions:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Mich. Comp. Laws § 691.1407(2). The Act defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a).

The Michigan governmental immunity law "does not alter the law of intentional torts as it existed before July 7, 1986." Mich. Comp. Laws § 691.1407(3). "[T]he immunity provided by M.C.L. § 691.1407(2) does not apply to an intentional tort by an individual governmental employee." *Walsh v. Taylor*, 263 Mich. App. 618, 621, 689 N.W.2d 506, 510 (2004). Assault and battery are intentional torts, *see Frankenmuth Mut. Ins. Co. v. Beyer*, 153 Mich. App. 118, 123, 395

N.W.2d 36, 38 (1986), as are false arrest, *see Linebaugh v. Berdish*, 144 Mich. App. 750, 761, 376 N.W.2d 400, 405 (1985), and false imprisonment. *See Cavalier Mfg. Co. v. Employers Ins. of Wausau*, 211 Mich. App. 330, 339, 535 N.W.2d 583, 588 (1995).

To prevail on an assault claim, a "plaintiff must show an 'intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact.'" *VanVorous v. Burmeister,* 262 Mich. App. 467, 482-83, 687 N.W.2d 132, 142 (2004) (quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16 (1991)). "To recover for battery, plaintiff must demonstrate a 'wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact.'" *Id.* at 483, 687 N.W.2d at 142 (quoting *Espinoza*, 189 Mich. App. at 119, 472 N.W.2d at 21).

A plaintiff alleging false arrest must "show that [the defendant] participated in an illegal and unjustified arrest, and that [the defendant] lacked probable cause to do so." *Walsh*, 263 Mich. App. at 626, 689 N.W.2d at 513 (citing *Peterson Novelties, Inc. v. Berkley,* 259 Mich. App. 1, 18, 672 N.W.2d 351 (2003)). False imprisonment

> involves "an unlawful restraint on a person's liberty or freedom of movement." *Peterson Novelties, supra* at 17, 672 N.W.2d 351, citing *Clarke v. K Mart Corp.*, 197 Mich. App. 541, 546, 495 N.W.2d 820 (1992). "The elements of false imprisonment are '(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement.'" *Moore v. Detroit*, 252 Mich. App. 384, 387, 652 N.W.2d 688 (2002), quoting *Adams v. Nat'l Bank of Detroit*, 444 Mich. 329, 341, 508 N.W.2d 464 (1993). The restraint must have occurred without probable cause to support it. *Peterson Novelties, supra* at 18, 672 N.W.2d 351.

*Walsh*, 263 Mich. App. at 627, 689 N.W.2d at 513-14.

Michigan courts "reject[] attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous*, 262 Mich. App. at 483-84, 687 N.W.2d at 143. In *VanVorous*, the court of appeals dismissed a gross negligence claim that was "fully premised on [the plaintiff's] claim of excessive force." *Id.* at 483, 687 N.W.2d at 143.

The defendants are not entitled to governmental immunity on the assault and battery, and false arrest/imprisonment, and gross negligence claims. *Walsh*, 263 Mich. App. at 621, 689 N.W.2d at 510. Further, gross negligence is explicitly exempted from the Act. Mich. Comp. Laws § 691.1407(2)(c).

The plaintiff will be permitted to proceed on the assault and battery claims. The plaintiff has testified that he was punched in the head three times and thrown against a wall. Such conduct amounts to a threat of force sufficient to "'create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact'" and "a 'willful and harmful or offensive touching of another person which results from an act intended to cause such contact.'" *VanVorous*, 262 Mich. App. at 482-83, 687 N.W.2d at 142 (quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16 (1991)).

However, the false arrest and false imprisonment claim (count two) will be dismissed because both claims require the plaintiff to prove a lack of probable cause. *Walsh*, 263 Mich. App. at 626-27, 689 N.W.2d at 513-14. As noted previously, however, the minor plaintiff's detention during the defendants' investigation of the plaintiff's involvement is permitted under *Terry* and its progeny.

In addition, the gross negligence count must be dismissed. A gross negligence claim cannot be based on activity that constitutes an intentional tort. *VanVorous*, 262 Mich. App. at 483-84, 687

N.W.2d at 143. In this case, those are the acts alleged to constitute assault, battery, and false arrest and imprisonment. None of the other facts alleged by the plaintiff involve "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). The plaintiff's gross negligence claim therefore will be dismissed.

III.

The Court finds that the detention of the minor plaintiff did not violate the constitution, but the manner in which he was seized is actionable because the defendants used excessive force. The manner of seizure therefore was objectively unreasonable and violated the plaintiffs' constitutional rights that were clearly established at the time. The defendants do not enjoy governmental immunity from the intentional torts of assault and battery, but the defendants are entitled to a judgment as a matter of law on the claims of false imprisonment and gross negligence.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt # 10] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that counts two (false imprisonment), four (gross negligence), and the part of count three of the complaint that alleges unlawful seizure are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the matter may proceed to trial on counts one and the part of count three of the complaint that alleges excessive force.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 8, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means or first class U.S. mail on December 8, 2006.

s/Felicia M. Moses
FELICIA M. MOSES